16 F.3d 411
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Bernard W. REESE, individually and in his capacity as
trustee of the Bernard W. Reese trust, Plaintiff-Appellant,
v.
Fred VANKIRK, as Commissioner of the West Virginia
Department of Transportation Division of Highways; Harold
R. Simmons, an employee of the planning and records section
of the West Virginia Department of Transportation Division
of Highways, Defendants-Appellees.
 No. 931680.
 United States Court of Appeals, Fourth Circuit.
 Argued December 8, 1993.
Decided January 31, 1994.
 
 1
 Appeal from the United States District Court for the Southern District of West Virginia, at Charleston. Dennis R. Knapp, Senior District Judge. (CA-92-616-2)
 
 
 2
 Christoper James Winton, Payne, Loeb & Ray, Charleston, WV, for Appellant.
 
 
 3
 Jeffrey Jay Miller, West Virginia Department of Highways, Charleston, WV, for Appellee
 
 
 4
 Mark W. Kelley, Payne, Loeb & Ray, Charleston, WV, for Appellant.
 
 
 5
 S.D.W.Va.
 
 
 6
 AFFIRMED.
 
 
 7
 Before NIEMEYER and HAMILTON, Circuit Judges, and NORTON, United States District Judge for the District of South Carolina, sitting by designation.
 
 OPINION
 PER CURIAM
 
 8
 Plaintiff-appellant Bernard W. Reese, individually and in his capacity as trustee of the Bernard W. Reese Trust ("Reese"), appeals the district court's grant of summary judgment in favor of the defendants, Fred Vankirk (Commissioner of the West Virginia Department of Transportation, Division of Highways) and Harold Simmons (an employee of the Planning and Records section of the West Virginia Department of Transportation, Division of Highways)[1] on each of the three claims Reese asserted below. For reasons stated herein, we affirm.
 
 
 9
 * The controversy in this case had its beginning in June 1990 when Reese erected a gate across Kanawha County Route 69/7 (the "Road"), a road located in Kanawha County, West Virginia, obstructing travel over the Road as it crossed his land. Shortly thereafter, when other property owners complained of the obstruction, the WVDTDH brought a civil action in the Circuit Court of Kanawha County to remove the obstruction and declare the portion of the Road as it passed through Reese's property public under the authority of, among other things, W. VA. CODE Sec. 17-1-3.[2]
 
 
 10
 Evidence presented at the state court trial illustrated that the Road was originally a county road, with jurisdiction and control of the Road passing to the State Road Commissioner in 1933 by Act of the West Virginia Legislature. In addition, the Road appeared on official highway county maps for Kanawha County and in the Kanawha County road inventory from that time until today. During the 1930s and 1940s, the Road served as the main thoroughfare to Rosenna, West Virginia, a town which had its own post office and a public schoolhouse, which was in use until the 1950s. The WVDTDH also offered proof that it had continually maintained the Road during the past decades.
 
 
 11
 The state court jury found that the Road as it passed through Reese's property was a public road. In his motion to set aside the verdict, Reese argued that W. VA. CODE Sec. 17-1-3 was unconstitutional. Reese's motion was denied and his petition for appeal of that judgment was refused by the Supreme Court of Appeals of West Virginia.
 
 
 12
 On June 26, 1992, Reese filed a complaint in the United States District Court for the Southern District of West Virginia. Reese's complaint contains three counts. Count one seeks declaratory relief, 28 U.S.C. Sec. 2201, that W. VA. CODE Sec. 17-1-3 is unconstitutional on its face and as applied because it violates the Takings Clause of the Fifth Amendment, substantive and procedural due process, and the Equal Protection Clause of the Fourteenth Amendment. Count two seeks to enjoin the WVDTDH from enforcing the judgment of the Kanawha County Circuit Court. Count three alleges a deprivation of rights under color of law in violation of 42 U.S.C. Sec. 1983.
 
 
 13
 On December 31, 1992, the WVDTDH moved for summary judgment on all counts. The district court granted this motion. Reese noted a timely appeal to this court.
 
 II
 
 14
 Pursuant to 28 U.S.C. Sec. 1738, federal courts must apply the claim and issue preclusion principles of the state which rendered the first judgment. Migra v. Warren City School Dist. Bd. of Educ., 465 U.S. 75, 81-85 (1984); United States v. Turner, 933 F.2d 240, 243 n. 2 (4th Cir.1991). Accordingly, West Virginia law is controlling on the issue of whether collateral estoppel bars relitigation here.
 
 
 15
 Under West Virginia law, collateral estoppel, or issue preclusion, applies if three factors are established: "the issue in question was (1) decided on its merits, (2) actually litigated, and (3) that the entity against whom collateral estoppel is asserted had a prior opportunity to litigate his claim." Christian v. Sizemore, 407 S.E.2d 715, 718 (W. Va.1991); see State ex rel. Hamrick v. LCS Services, 414 S.E.2d 620 (W. Va.1992); Tri-State Asphalt Prod. v. Dravo Corp., 412 S.E.2d 225 (W. Va.1991). The Supreme Court of Appeals of West Virginia summarized the doctrine of collateral estoppel as follows:
 
 
 16
 Collateral estoppel is designed to foreclose relitigation of issues in a second suit which have actually been litigated in the earlier suit even though there may be a difference in the cause of action between the parties of the first and second suit. We have made this summary of the doctrine of collateral estoppel:
 
 
 17
 "But where the causes of action are not the same, the parties being identical or in privity, the bar extends to only those matters which were actually litigated in the former proceeding, as distinguished from those matters that might or could have been litigated therein, and arises by way of estoppel rather than by way of strict res adjudicata." Lane v. Williams, 150 W. Va. 96, 100, 144 S.E.2d 234, 236 (1965). Conley v. Spillers, 301 S.E.2d 216, 220 (W. Va.1983).
 
 
 18
 In light of the above principles, we believe Reese is collaterally estopped from relitigating the constitutionality of W. VA. CODE Sec. 17-1-3 in the instant forum. All three counts of Reese's complaint squarely fit within the three-part test for collateral estoppel set forth under West Virginia law. In his motion to set aside the state court verdict, the issue of the constitutionality of W. VA. CODE Sec. 17-1-3 was "(1) decided on its merits [and] (2) actually litigated." Christian, 407 S.E.2d at 718. Moreover, applying the third factor espoused in Christian, we note that Reese had a "prior opportunity to litigate his claim." Id. Indeed, he argued the constitutional issue in his motion to set aside the state court verdict. Therefore, although the "causes of action are not the same," Lane, 144 S.E.2d at 236, relitigation of the constitutional issues is still barred because these matters "were actually litigated in the former proceeding." Id.
 
 III
 
 19
 In any event, Reese's claims fail on the merits. Initially, Reese contends that W. VA. CODE Sec. 17-1-3 is violative, on its face and as applied, of the Takings Clause of the Fifth Amendment and the Due Process Clause of the Fourteenth Amendment. These arguments have no merit.
 
 
 20
 The Supreme Court has stated that statutes of limitations go to matters of remedy and not the destruction of fundamental rights. Chase Securities Corp. v. Donaldson, 325 U.S. 304, 314 (1945). Accordingly, a statute of limitations does not deprive a person of property without just compensation or due process of law unless it unreasonably limits the opportunity to enforce a right by suit. Wheeler v. Jackson, 137 U.S. 245, 258 (1890).
 
 
 21
 In this case, we believe W. VA. CODE Sec. 17-1-3 does not unreasonably limit the opportunity to enforce any rights. The ten year statute of limitations provides more than ample opportunity to assert any rights in property prior to the property becoming public. Under a literal reading of the statute, a road shall be conclusively presumed to be public when: (1) it has been used by the public for a period of ten years or more and (2) public monies have been expended thereon.
 
 
 22
 Under this literal reading, if public monies were expended only on the last day of ten consecutive years of public use, the Road would be public. This potential circumstance arguably raises some constitutional concerns. However, West Virginia's highest court has interpreted W. VA. CODE Sec. 17-1-3 to require regular public maintenance during the limitations period, as opposed to nonsporadic maintenance. Wilson v. Seminole Cole Corp., 336 S.E.2d 30, 31-32 (W. Va.1985). This interpretation by the Supreme Court of Appeals of West Virginia, which is, of course, binding on us, see Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 73 (1911) (construction of state statute by highest court of state "must be accepted by the courts of the United States, and be regarded by them as a part of the provision when they are called upon to determine whether it violates any right secured by the Federal Constitution"), alleviates all of our constitutional concerns. The effect of W. VA. CODE Sec. 17-1-3 is simply to require an owner, who desires to retain title to property that is being used by the public and where public monies are being regularly used to maintain the property, to prohibit the public use of it or make objection to it in the courts within the limitations period. It is clear that the State of West Virginia has the authority to impose such a slight burden as a predicate to owning property within its borders. Thus, Reese's claims founder on his failure to prohibit the public use of the Road or to make a proper objection to the public use in the appropriate forum within the ten year limitations period.[3]
 
 IV
 
 23
 For the reasons stated herein, the judgment of the district court is affirmed.
 
 
 24
 AFFIRMED.
 
 
 
 [1]
 We will refer to the defendants-appellees as the "WVDTDH."
 
 
 [2]
 W. VA. CODE Sec. 17-1-3 provides in pertinent part:
 [A public] road shall be conclusively presumed to have been established when it has been used by the public for a period of ten years or more, and public moneys [sic] or labor have been expended thereon, whether there be any record of its conveyance, dedication or appropriation to public use or not.
 
 
 [3]
 We find no merit to Reese's arguments that W. VA.CODE Sec. 17-1-3 violates the dictates of substantive due process or equal protection